445 S.E.2d 234

**Linda L. POWROZNIK, Administratrix and Personal Representative of the Estate of Dennis F. Powroznik, Plaintiff Below,**

v.

**C. & W. COAL COMPANY, a Corporation, Defendant Below.**

**Dennis Michael W., Infant.**

**No. 22014.**

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1994.

Decided May 27, 1994.

LaVerne Sweeney, Grafton, for plaintiff.

Thomas V. Flaherty, Robert B. Paul, Flaherty, Sensabaugh & Bonasso Charleston, for C. & W. Coal Co.

George F. Fordham, Clarksburg, guardian ad litem, for Dennis Michael W., infant.

MILLER, Justice:

We accepted two certified questions from the Circuit Court of Harrison County relating to the amount a plaintiff's attorney may charge as a fee in civil actions for damages for personal injuries or death caused by the deliberate intent of an employer. The underlying case is a civil action filed by Linda L. Powroznik, administratrix and personal representative of the Estate of Dennis F. Powroznik, who was killed while working for C. & W. Coal Company. The suit claimed that Mr. Powroznik's death was a result of the deliberate intent of the employer under W.Va.Code, 23-4-2(b) (1983),[1] and, thus, the employer was prohibited from asserting workers' compensation coverage as a defense.

The employer elected to obtain insurance protection under the Employers' Excess Liability Fund (EELF) created under W.Va. Code, 23-4C-1, et seq., which was designed to protect employers from excess damages arising out of deliberate intent cases.[2] Funding for this insurance coverage is obtained by premiums charged to participating employers.[3] It is administered by the Work-

---

**1.** W.Va.Code, 23-4-2(b), states generally:

"If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter."

This section goes on to provide a detailed test as to "deliberate intent," as set out in W.Va.Code, 23-4-2(c). *See Mayles v. Shoney's, Inc.,* 185 W.Va. 88, 405 S.E.2d 15 (1990). Minor revisions were made in 1991 to W.Va.Code, 23-4-2. Sub-

section (b), however, remains identical to the 1983 version.

**2.** The purpose of the EELF is spelled out clearly in W.Va.Code, 23-4C-1 (1983): "The purpose of this article is to establish a fund to provide insurance coverage for employers subject to this chapter who may be subjected to liability under section two [§ 23-4-2], article four of this chapter, for any excess of damages over the amount received or receivable under this chapter."

**3.** W.Va.Code, 23-4C-4 (1983), in relevant part, states:

"For the purpose of creating the employers' excess liability fund, each employer who shall

ers' Compensation Commissioner.[4]

The plaintiff's attorney, after filing suit in 1988, eventually was able to arrange a settlement of the claim with the EELF in 1993. Guardians ad litem were appointed to represent the interests of infant beneficiaries involved in the wrongful death claim. At the final hearing to approve the settlement, one of the guardians ad litem inquired as to the fee of the plaintiff's attorney. He was informed that the case was being handled under a one-third contingent fee contract. The guardian ad litem argued that he believed the proper fee was the statutory fee of 20 percent for workers' compensation cases set out in W.Va.Code, 23–5–5 (1975).[5]

The circuit court, after hearing arguments, decided that the attorney's fee was not limited by the workers' compensation statute, and, therefore, a one-third fee was appropriate. The circuit court then certified the following questions, answering each in the negative:

"(1) Does West Virginia Code § 23–5–5, which limits attorney's fees in workers' compensation cases to twenty percent for two hundred and eight weeks, apply to civil actions seeking damages for personal injuries or death under the deliberate intent exception to West Virginia Code § 23–4–2 where the employer is provided insurance coverage by the Employers' Ex-

cess Liability Fund (W.Va.Code § 23–4C–1, *et. seq.*) for any damages recovered over the amount received or receivable under Chapter 23 of the West Virginia Code?

"(2) Is an attorney's one-third contingent fee proscribed relative to a settlement in a civil action where such settlement is paid by the West Virginia Employers' Excess Liability Fund under West Virginia Code § 23–4C–3?"[6]

Historically, we have discussed the workers' compensation fee statute, W.Va.Code, 23–5–5, in terms of a workers' compensation claim. *See Committee on Legal Ethics v. Coleman*, 180 W.Va. 493, 377 S.E.2d 485 (1988); *Hinerman v. Levin*, 172 W.Va. 777, 310 S.E.2d 843 (1983). Indeed, the language of this statute, i.e., the terms "claimant," "dependent," "benefits," and the "two hundred eight weeks" limitation, follows traditional workers' compensation claims, as outlined in the Workers' Compensation Act, W.Va.Code, 23–1–1, *et seq.*

On the other hand, the action permitted by the exemption in W.Va.Code, 23–4–2, allows a traditional tort action to be filed against an employer where the damages are not limited by any workers' compensation statute. The pertinent language of W.Va.Code, 23–4–2(b),[7] permits the employee to "have cause of action against the employer, as if this chapter had not been enacted[.]"[8]

elect to subscribe to the fund shall pay premiums based upon and being such a percentage of the payroll of the employer as the commissioner may determine. It shall be the duty of the commissioner to fix and maintain the lowest possible rates or premiums consistent with the maintenance of a solvent fund. The premium rates shall be adjusted annually, or more often as may in the opinion of the commissioner be necessary."

4. W.Va.Code, 23–4C–5 (1983), in pertinent part, states: "The employers' excess liability fund shall be administered by the state workmen's [workers'] compensation commissioner, who shall employ such employees as may be necessary to discharge his duties and responsibilities under this article." In 1991, this section was amended to substitute "workers' compensation" for "workmen's compensation."

5. W.Va.Code, 23–5–5, in relevant part, states: "On or after the first day of July, one thousand nine hundred seventy-five, no attorney's fee in excess of twenty percent of any award

granted shall be charged or received by an attorney for a claimant or dependent. In no case shall the fee received by the attorney of such claimant or dependent be in excess of twenty percent of the benefits to be paid during a period of two hundred eight weeks." The 208–week limitation appears to be derived from W.Va.Code, 23–4–6(c), which states that a temporary total disability award "for a single injury causing temporary disability shall be for a period not exceeding two hundred eight weeks."

6. W.Va.Code, 23–4C–3, outlines how payment is made from the EELF when a settlement is made or when a jury awards damages.

7. For the entire text of W.Va.Code, 23–4–2(b), see note 1, *supra.*

8. The traditional workers' compensation bar against civil actions against a covered employer is found in W.Va.Code, 23–2–6:

"Any employer subject to this chapter who shall subscribe and pay into the workmen's

We discussed at some length in *Mooney v. Eastern Associated Coal Corp.*, 174 W.Va. 350, 326 S.E.2d 427 (1984), the type of damages that could be recovered where the deceased employee was killed at work through the deliberate intent of his employer and concluded in Syllabus Point 3:

> "A verdict in a wrongful death action may include damages for both pecuniary and non-pecuniary losses. While an award of damages for pecuniary loss, such as loss of future income, should be calculated to present value, non-pecuniary damages, such as those awarded for mental anguish, should not."

█ Moreover, in *Mooney*, we also discussed the offset language in W.Va.Code, 23–4–2(b), that allows an offset for any workers' compensation benefits received as a result of the employee's injury or death as against the damages received in a deliberate intent civil action. In Part II of the *Mooney* dissenting opinion, which became in effect the majority opinion because it had the agreement of four of the justices, we said: "To determine the excess or ultimate recovery in a *Mandolidis* suit, the amount of workers' compensation benefits, paid or due to be paid the plaintiff, must be subtracted from that particular plaintiff's award of damages." 174 W.Va. at 358, 326 S.E.2d at 435.[9]

Thus, it is clear that in determining the excess or ultimate recovery in a deliberate intent suit against an employer under W.Va. Code, 23–4–2(b), the amount of the workers' compensation benefits paid or due to be paid the plaintiff must be subtracted from that particular plaintiff's award of damages. In this case, the circuit court's order as to the distribution of the proceeds identified the $425,000 settlement figure to be a net figure after deduction of the workers' compensation benefits paid for the employee's death.

█ There is inherent in every deliberate intent injury or death the possibility of a workers' compensation award under W.Va. Code, 23–4–2(b), because it gives "the employee, the widow, widower, child or dependent of the employee ... the privilege to take under this chapter," i.e., the Workers' Compensation Act.[10] Where a workers' compensation claim is made under W.Va.Code, 23–4–2(b), the attorney's fee for any workers' compensation award is controlled by the attorney's fee schedule contained in W.Va. Code, 23–5–5.[11]

█ However, the second component of a deliberate intent suit under W.Va.Code, 23–4–2(b), allows for a civil action in the circuit court "for any excess of damages over the amount received or receivable under [the Workers' Compensation Act]." The attorney's fee for damages obtained in excess of that received through workers' compensation is not controlled by the workers' compensation fee schedule contained in W.Va.Code, 23–5–5. Thus, we find the circuit court was correct in holding that the workers' compensation fee schedule did not apply to the settlement in this case.

█ The fact that the employer is insured through EELF does not change this result. As earlier noted, EELF is a separate insurance fund handled by the Workers' Compensation Commissioner into which employers pay premiums for their insurance coverage. The deliberate intent suit is a civil action governed by the West Virginia Rules of Civil Procedure and attorney's fees are controlled the same as attorney's fees in any other civil action for personal injuries or wrongful death.

compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided, shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing[.]"

9. The term *"Mandolidis* suit" is drawn from the initial case of *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), that gave a detailed discussion of a deliberate intent cause of action under W.Va.Code, 23–4–2(b).

10. For the text of W.Va.Code, 23–4–2(b), see note 1, *supra.*

11. The plaintiff's attorney stated in the oral argument before this Court that because of the simplicity of filing the widow's claim for workers' compensation death benefits, he did not charge her any fee on this award—a commendable position.

The certified questions having been answered in the negative, this case is dismissed from the docket.[12]

Answered and dismissed.

---

12. George F. Fordham, the guardian ad litem for Dennis Michael W., an infant, asks that he be permitted attorney's fees for his work in pursuing this appeal. We believe he is entitled to an additional award. We direct the circuit court to make such an award with the cost to be borne by the employer.